NR:VTN
F. #2010R02175

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - X<br><br>UNITED STATES OF AMERICA<br><br>- against -<br><br>YONG MIN CHOE,<br>  also known as "Jason,"<br><br>  Defendant.<br><br>- - - - - - - - - - - - - - - - - - - - - - - - - - - X | **FILED UNDER SEAL**<br><br>**COMPLAINT AND<br>AFFIDAVIT<br>IN SUPPORT OF<br>APPLICATION<br>FOR AN ARREST<br>WARRANT**<br><br>(18 U.S.C. § 1349)<br><br>Case No. 19-1090-M |

EASTERN DISTRICT OF NEW YORK, SS:

William E. Brust, being duly sworn, deposes and states that he is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), duly appointed according to law and acting as such.

On or about and between March 14, 2004 and December 2017, within the Eastern District of New York and elsewhere, the defendant YONG MIN CHOE, also known as "Jason," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. As a Special Agent with HSI, I have participated in the investigation of numerous cases involving the harboring and employment of undocumented aliens, aggravated identity theft and fraud. I am familiar with the facts and circumstances set forth below from my participation in the investigation, my review of the investigative file and from reports of other law enforcement officers involved in the investigation.

The Franchisor, Franchise Agreement and Legal Framework

2. On or about March 14, 2004, the defendant YONG MIN CHOE, also known as "Jason," entered into a standard franchise agreement ("the Agreement") with 7-Eleven Incorporated ("SEI"), the franchisor of most 7-Eleven stores in the United States, for the operation of 7-Eleven Store Number 32608, located at 329 Washington Avenue, Brentwood, New York (the "Store"). I have examined a copy of the Agreement. Pursuant to the Agreement, SEI retained ownership of, but granted to CHOE a license to use, among other things, the real property, building, SEI trademarks and specialized equipment (such as certain food and drink machines) associated with the Store. SEI also provided a revolving line of credit to CHOE to pay vendors.

3. The Agreement stated that a material breach of its terms would occur if the defendant YONG MIN CHOE, also known as "Jason," among other things, "violate[d] or fail[ed] to comply with any applicable law, rule, regulation, ordinance or order relating to the

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

operation of the store." The Agreement further provided that upon such a breach, SEI could, among other things, rescind the license to operate the Store, repossess its property and terminate CHOE's revolving line of credit.

4. Among the legal provisions applicable to the Store's operation was Title 8, Code of Federal Regulations, Section 274a, which required the defendant YONG MIN CHOE, also known as "Jason," to verify through identification documents that potential Store employees were authorized to work in the United States. Furthermore, the Fair Labor Standards Act ("FLSA"), Title 29, United States Code, Section 207(a)(1), required employers such as CHOE to pay employees at least one and one-half times their regular rates of pay for hours worked in excess of 40 in a workweek.

5. Based on my conversations with representatives of SEI, I learned how franchisees like the defendant YONG MIN CHOE, also known as "Jason," would pay their employees. SEI provided CHOE with an automated payroll service that required CHOE to enter his employees' personal identifying information, including names and social security account numbers, and hours worked into a data terminal maintained at the Store. CHOE used the system and thereby regularly caused the system to transmit payroll information by wire from the Store in Long Island, New York, to SEI's corporate headquarters in Dallas, Texas. SEI processed the payroll and issued wages directly to the Store employees by check, direct deposit or a debit card issued in an employee's name. SEI maintained a record of the payroll data entered by its franchisees, including CHOE, as part of the regular course of its business.

## The Fraudulent Scheme

6. On or about and between March 14, 2004 and December 2017, the defendant YONG MIN CHOE, also known as "Jason," together with others, engaged in a fraudulent scheme to increase his profits by employing aliens without work authorization ("undocumented aliens") at the Store, paying the undocumented aliens sub-standard wages and denying them overtime compensation. To carry out the scheme, CHOE knowingly failed to require undocumented aliens to show proof of authorization to work in the United States, accepted false documentation from undocumented aliens and provided false identities and identification documents to undocumented aliens to fraudulently represent that the aliens were authorized to work in the United States.

7. Furthermore, to conceal his scheme and avoid being found in breach of the Agreement, instead of entering the true identities of the undocumented alien-employees into SEI's payroll system, the defendant YONG MIN CHOE, also known as "Jason," entered false information, including names and social security account numbers. In some instances, the false information belonged to real individuals, and in other instances, the names and social security account numbers entered by CHOE were fictitious. Through his scheme, CHOE denied SEI the right to control its property by terminating the Agreement with CHOE, repossessing its real and other property, and taking over management of the Store.

8. The defendant YONG MIN CHOE, also known as "Jason," exploited the undocumented alien-employees by misappropriating significant portions of their wages for his own use. Among other things, CHOE withheld from undocumented alien-employees the paychecks and debit cards that SEI issued in the false names that CHOE had provided to

SEI, paying only a portion of the wages to workers in cash and keeping the rest of the money for himself.

### CHOE's Employment of Individual 1

9. An individual whose identity is known to me ("Individual 1") was an undocumented alien who worked at the Store from in or about and between 2002 and May 2016. I have interviewed Individual 1, who reported the following information, in sum, substance and part.

10. The defendant YONG MIN CHOE, also known as "Jason," was aware that Individual 1 was not authorized to work in the United States because when Individual 1 applied to work at the Store, Individual 1 informed CHOE that Individual 1 did not have a work permit, social security card or green card. CHOE nonetheless hired Individual 1 and paid Individual 1 under false names and social security account numbers.

11. Individual 1 worked six to seven 12-hour shifts per week at the Store and was paid approximately $680 to $690 weekly. The defendant YONG MIN CHOE, also known as "Jason," did not give Individual 1 overtime pay, vacation or sick leave. Over the course of Individual 1's employment, CHOE provided Individual 1 with SEI debit cards, at least one of which bore the name of another individual, as payment of Individual 1's wages.[2] Individual 1 recalled the specific names of some of the individuals under which CHOE paid Individual 1.

12. I have examined the payroll records maintained by SEI for the Store (the "Payroll Records") and identified many of the names that Individual 1 reported as being

---

[2] Over the course of Individual 1's employment, there were some periods when CHOE paid Individual 1's wages in cash.

used by CHOE and Individual 1 in the payroll records submitted by CHOE to SEI, including the name of John Doe 1. I determined that John Doe 1 was reported by CHOE to SEI as having a social security account number ending in 6285. CHOE further reported that John Doe 1 worked at the Store from the periods in or about and between November 2011 and July 2013 and in or about and between October 2013 and October 2015. Individual 1 reported that during the periods when Individual 1 was paid under the name of John Doe 1, there was no one employed at the Store by that name and that the Payroll Records associated with John Doe 1 represented the earnings of Individual 1.

13. Based on my examination of the Payroll Records, I further determined that CHOE reported to SEI that a person with Individual 1's name was working at the Store from in or about and between June 2009 and August 2012, but reported that Individual 1 had a social security account number ending in 9556. According to the records of the Social Security Administration (the "SSA"), the social security account number ending in 9556 is fictitious in that it was never issued by the Commissioner of the SSA nor has it ever been assigned to any individual. Accordingly, it is not a valid social security account number.

### CHOE's Employment of Individual 2

14. A second individual whose identity is known to me ("Individual 2") was an undocumented alien who worked at the Store for approximately three years until he stopped working in September 2016. HSI Special Agents interviewed Individual 2, who reported the following information, in sum, substance and part.

15. The defendant YONG MIN CHOE, also known as "Jason," was aware that Individual 2 was not authorized to work in the United States and paid Individual 2 under a false name and social security number. Individual 2 informed CHOE that Individual 2

was not authorized to work by presenting CHOE with a copy of Individual 2's non-United States passport and an expired visa. CHOE nonetheless hired Individual 2. Individual 2 usually worked 32 hours during a week.

16. The defendant YONG MIN CHOE, also known as "Jason," provided Individual 2 with an SEI debit card to pay Individual 2's wages. Individual 2 was paid under the name of John Doe 2, an individual who had a social security account number ending in 6185. Individual 2 is a relative of John Doe 2 and knows that John Doe 2 never worked at the Store.

17. Based on my examination of the Payroll Records, I determined that CHOE reported to SEI that John Doe 2 worked at the Store from in or about and between October 2012 and September 2016. At no time did CHOE report to SEI that Individual 2 was employed at the Store.

### CHOE's Employment of Individual 3

18. A third individual whose identity is known to me ("Individual 3") was an undocumented alien who worked at the Store from in or about and between 2005 and December 2017. I have interviewed Individual 3, who has reported the following information, in sum, substance and part.

19. Individual 3 told the defendant YONG MIN CHOE, also known as "Jason," that Individual 3 was not authorized to work in the United States. CHOE nonetheless hired Individual 3. While employed at the Store, Individual 3 worked approximately 60 hours per week and was not paid overtime until starting in or about 2016. When Individual 3 began working for CHOE, CHOE told Individual 3 to provide a false identity for payroll purposes. Individual 3 complied and CHOE paid Individual 3 under the

false identity. Subsequently, CHOE assigned Individual 3 other stolen identities for payroll purposes. At other times during Individual 3's period of employment, CHOE assigned a fictitious social security account number to Individual 3. Individual 3 recalled the specific names of some of the individuals under which CHOE paid Individual 3.

20. Upon my review of the Payroll Records, I identified many of the names that Individual 3 reported as being used by CHOE and Individual 3, including the names of John Doe 3, John Doe 4 and John Doe 5.

21. I determined that John Doe 3 was reported by CHOE to SEI as having a social security account number of ending in 0217 and purportedly worked at the Store from the periods in or about and between January 2008 and July 2009, in or about and between December 2011 and March 2013, in or about and between April 2014 and March 2016, and August 2016 to December 2017. Individual 3 reported that during the periods when Individual 3 was paid under the name of John Doe 3, there was no one employed at the Store by that name.

22. Upon my review of the Payroll Records, I determined that John Doe 4 was reported by CHOE to SEI as having a social security account number of ending in 7802 and purportedly worked at the Store from the period in or about and between May 2016 and June 2018. Individual 3 reported that during the periods when Individual 3 was paid under the name of John Doe 4, there was no one employed at the Store by that name.

23. Upon my review of the Payroll Records, I determined that John Doe 5 was reported by CHOE to SEI as having a social security account number of ending in 6431 and purportedly worked at the Store from the period in or about and between March 2007and October 2009. According to the records of the SSA, the social security account number

ending in 6431 is fictitious in that it was never issued by the Commissioner of the SSA nor has it ever been assigned to any individual. Accordingly, it is not a valid social security account number.

## Conclusion

24. In furtherance of the scheme, the defendant YONG MIN CHOE, also known as "Jason," entered false identification information for Individual 1, Individual 2, Individual 3 and others into the SEI payroll system and caused the system to transmit the materially false information by wire from the Store to SEI headquarters in Texas.

WHEREFORE, your deponent respectfully requests that the defendant YONG MIN CHOE, also known as "Jason," be dealt with according to law. Your affiant also respectfully requests that this affidavit and any issued arrest warrant be sealed as the defendant remains at large and public disclosure of this affidavit and/or arrest warrant may lead him to flee or otherwise seek to avoid apprehension.

William E. Brust
Special Agent, United States Department of
Homeland Security, Homeland Security
Investigations

Sworn to before me this
19 day of November, 2019

THE HONORABLE ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK