LAW OFFICES OF
# JEFFREY LICHTMAN
11 EAST 44TH STREET
SUITE 501
NEW YORK, NEW YORK 10017
www.jeffreylichtman.com

JEFFREY LICHTMAN
JEFFREY EINHORN
JASON GOLDMAN

PH: (212) 581-1001
FX: (212) 581-4999

October 23, 2020

**BY ECF**
Hon. Joanna Seybert
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

  Re: <u>**United States v. Yong Min Choe**, 20 CR 153 (JS)</u>

Dear Judge Seybert:

### A.  INTRODUCTION

  This letter is submitted on behalf of defendant Yong Min ("Jason") Choe in anticipation of his October 30, 2020 sentencing. With this letter, the defendant respectfully requests a probationary sentence, which is "sufficient, but not greater than necessary to comply with the purposes" set forth in 18 U.S.C. § 3553(a)(2) due, in part, to the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The basis for this request is threefold: *first*, Mr. Choe unconditionally accepted responsibility for his criminal conduct from the moment that he was arrested in this case, instructing counsel to immediately negotiate a guilty plea following his arrest; *second*, the defendant overcame extraordinary hardships as a young immigrant from South Korea, having worked for his parent's market while simultaneously raising his siblings and attending school before becoming a successful business owner; and *third*, a review of the defendant's life finds that there are many good deeds, including his ongoing efforts to aid his family and local community. The prospects for Mr. Choe's rehabilitation are therefore very good.

### B.  THE DEFENDANT'S GUILTY PLEA
###       AND RESULTING GUIDELINES RANGE

  On September April 29, 2020, Mr. Choe pleaded guilty pursuant to a plea agreement to a single-count Information which charged him with Conspiracy to Conceal and Harbor Illegal Aliens for Financial Gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i).

JEFFREY LICHTMAN

Hon. Hon. Joanna Seybert
United States District Judge
October 23, 2020
Page 2

See April 27, 2020 Plea Agreement ("Plea Agreement") at p. 1. Mr. Choe faces no mandatory minimum and a maximum sentence of 10 years imprisonment. Id.

As recounted in the Presentence Investigation Report ("PSR"), the base offense level for a violation of 8 U.S.C. §§ 1324 is determined by U.S.S.G. § 2L1.1, which sets it at 12. See U.S.S.G. § 2L1.1(a)(3); PSR at ¶ 20. As the offense involved the harboring of between six and 24 aliens – in this instance, at least 9 – three levels are added (§2L1.1(b)(2)(A)), and because the defendant organized the offense and it involved at least one other criminally responsible participant, his store manager, a two-level role enhancement applies. PSR at ¶ 23; U.S.S.G. § 3B1.1(c). With three levels subtracted for acceptance of responsibility (U.S.S.G. § 3E1.1), the total offense level becomes 14, carrying an advisory sentencing range in the Criminal History Category I of 15 to 21 months imprisonment. PSR at ¶¶ 29.

  **C.**  **THE DEFENDANT'S BACKGROUND
AND THE NATURE OF THE OFFENSE –
APPLICATION OF § 3553(a) FACTORS**

Since the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), the Sentencing Guidelines have been rendered advisory in nature, leaving sentences to the district court's discretion, guided by the Guidelines and the other factors contained within 18 U.S.C. § 3553(a) and bounded by any applicable statutory minimum and maximum. This Section directs sentencing courts to "impose a sentence" that is "sufficient, but not greater than necessary, to comply with" the "need for the sentence ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; [and] to protect the public from further crimes of the defendant ...." 18 U.S.C. §3553(a)(1)-(2) (emphasis supplied). In making this determination, courts are to consider "the nature and circumstances of the offense and the history and characteristics of the defendant ...." 18 U.S.C. § 3553(a)(1).

**The Nature and Circumstances of the Offense**

As observed in the PSR, Mr. Choe entered into a franchise agreement with 7-Eleven, Inc. in March 2004 to operate a store located in Brentwood, New York. PSR at ¶ 5. Among Mr. Choe's responsibilities as a franchisee, he was required to "verify via documentation that potential 7-Eleven store employees were authorized to work in the United States," and pursuant to the Fair Labor Standards Act, 28 U.S.C. § 207(a)(1), he was also required "to pay employees one-and-one-half times their regular rates of pay for hours worked in excess of a 40-hour work week." PSR at ¶ 7. Mr. Choe failed in both respects with regard to multiple employees. Specifically, he failed to require that at least nine employees "show proof of authorization to work in the United States, accepted false documentation from aliens," and in a few instances,

JEFFREY LICHTMAN

Hon. Hon. Joanna Seybert
United States District Judge
October 23, 2020
Page 3

aided in the "provid[ing] [of] false .... identification documents to undocumented aliens to fraudulently represent that they were authorized to work in the United States."[1]  PSR at ¶ 9. Further, Mr. Choe underpaid at least six former employees and owes $168,215 in back wages.[2] PSR at ¶ 13.  Notably, while certain employees were underpaid, none were compelled or otherwise forced or threatened to work for Mr. Choe at his convenience store – instead, each of the five affidavits of loss submitted by the victims and summarized in the Third Addendum to the PSR indicate that Mr. Choe's employees were deprived overtime wages.  See Third Addendum to PSR at pp. 1-2.

Finally, Mr. Choe and 7-Eleven, Inc. are being sued by several of their former employees arising out of these same facts in Carbajal, et al. v. 7-Eleven, Inc., et al., 18 CV 3273 (SJF) (EDNY).  The defendant may therefore be responsible for paying restitution to these former employees and potentially a civil judgment or settlement as well, and in this manner, he may receive multiple punishments for his criminal conduct.

### The History and Characteristics of the Defendant

We have attached over 20 character letters in support of this submission, reflecting the significant and meaningful role that Mr. Choe has played in the lives of friends, family members and recipients of his charity and good nature.  It would be impossible to include a letter from every individual whom the defendant has positively influenced.  Still, the myriad letters on which we do remark paint a consistent picture of a "loving person, willing to put others before himself," (Letter of Bong Jin Choe, attached as Exhibit A) who has provided an "endless amount of support" to family and friends (Letter of Gye Yeong Yun, attached as Exhibit B) and is the "number one cheerleader" for his children and others close to him.  July 13, 2020 Letter of Ellen Choe, attached as Exhibit C; July 12, 2020 Letter of Christopher Choe, attached as Exhibit D ("Jason has been a pillar of support for me"); see also Letter of Young Ae Chun, attached as

---

[1] The PSR also references cash payments to employees.  PSR at ¶ 11.  This occurred only over a few month period while 7-Eleven was switching to a new payroll system.

[2] Mr. Choe has agreed to forfeit over $1.4M in proceeds traceable to his ownership of the 7-Eleven franchise.  Pursuant to the Asset Forfeiture Manual of the Department of Justice, the defendant requests that the Attorney General utilize a small portion of the forfeited funds to satisfy his $168,215 restitution obligation.  See Asset Forfeiture Policy Manual 2019, United States Department of Justice, p. 181, available at: https://www.justice.gov/criminal-afmls/file/839521/download (last viewed October 15, 2020); e.g., United States v. Torres, 703 F.3d 194, 204-5 (2d Cir. 2012) (observing that defendants may request that the Attorney General apply forfeited funds to satisfy restitution obligations).

JEFFREY LICHTMAN

Hon. Hon. Joanna Seybert
United States District Judge
October 23, 2020
Page 4

Exhibit E ("When I was sick, Jason is the one who would take me to the doctor and buy me medicine"). Sadly, were it not for this sentencing, many of Mr. Choe's exceptionally good deeds probably would have gone unrecognized.

Additionally, the letters appended to this submission establish that those closest to Mr. Choe were shocked and "very surprised" to learn that he could be involved in any criminal wrongdoing. July 11, 2020 Letter of Emilia Gonzalez, attached as Exhibit F; see, e.g., July 11, 2020 Letter of Marie Louise Evelyne Sawadogo, attached as Exhibit G ("I was shocked when Jason told me about his legal trouble"). Many simply "could not believe what [they were] hearing" upon being informed of Mr. Choe's crime. July 14, 2020 Letter of Ryan Pak, attached as Exhibit H. Mr. Choe was the picture of an immigrant success story, coming to America near penniless only to wind up owning a home in Long Island and multiple businesses after years of hard work and sacrifice. His tumble from these great heights was surprising to all that know him.

<u>Mr. Choe's Difficult Childhood</u>

Before turning to the letters praising Mr. Choe as a dedicated friend and family member, as well as an active participant in his community, an examination of his difficult childhood is warranted.

As observed in the PSR, Mr. Choe immigrated to the United States from South Korea in 1977 when he was 12 years old. PSR at ¶ 40. The defendant's life in South Korea was very difficult – his family was destitute and he lived in a two-bedroom apartment that occasionally housed as many as 15 extended family members. PSR at ¶ 39. His home lacked electricity and indoor plumbing, and his parents, who worked as street vendors, struggled to earn a sufficient income to feed their children. Id. Because he was the eldest child, Mr. Choe's parents relied on him to watch over his siblings, and despite trying to take care of his siblings and attend school, Mr. Choe frequently was subjected to corporal punishment when he "did not live up to his parent's strict expectations." Id. Indeed, at least once per month he would be reprimanded using a baton or stick at the hands of his parents when he struggled in school or could not keep his younger siblings in line. Id.

Mr. Choe was 12 years old when his family entered the United States, where he, his parents, and his three siblings all lived together in a one-bedroom apartment in Queens. PSR at ¶ 40. Mr. Choe spoke no English upon his arrival – and he struggled both academically and socially on account of this deficiency. Id. As with their life back in South Korea, Mr. Choe's parents worked long hours to make ends meet – first as food vendors, and later, at the grocery business they started. And as before, they expected Mr. Choe to to make sure that his siblings completed their homework and chores, and were fed by him. Id. By the time he was fourteen years old, Mr. Choe was also required to work every weekend and on many week nights at his

JEFFREY LICHTMAN

Hon. Hon. Joanna Seybert
United States District Judge
October 23, 2020
Page 5

parents' store.  Id.; see also Ltr. of Ellen Choe, Ex. C ("I cannot imagine going through life with even half of the heavy burdens by father shouldered ... immigrating to a foreign country at a young age and being responsible for his siblings while working ...."). Unsurprisingly, the defendant's studies suffered on account of these additional responsibilities, although he did complete high school and graduated from Stony Brook University. Id.

The defendant's father, Bong Jin Choe, recalls that his son gave up much of his childhood to aid their family upon immigrating to the United States:

> Jason always worked with us on weekends and during his summer vacation because we needed help and couldn't afford to hire anyone. When he wasn't working, he was in charge of his younger siblings while his mother and I worked all the time. I always felt sorry that he had so much responsibility at a young age and did not enjoy a true childhood like my other children, but my son never complained. He has always been a loving person, willing to put others before himself.

Ltr. of Bong Jin Choe, Ex. A; see also July 17, 2020 Letter of Daniel Choe, attached as Exhibit I ("He sacrificed his childhood to provide for his family and continued to put his family first as he built his own").

Mr. Choe's brother, Christopher, echoes their father's sentiment, recalling for the Court his brother's efforts to aid their struggling family when they were just starting out in the United States:

> Our parents ran a grocery store in Brooklyn. I personally didn't see them much, for they seemed to be always working. The times they weren't working, they were at church. Not to bemoan our childhood, they were fantastic parents who modeled an incredible work ethic and prayed for us constantly, as they couldn't always be there for us physically. *Being the eldest son, Jason probably had the toughest childhood.* While I was too young and physically too weak to really help out at the store, Jason and my other brother Sam were Junior H.S. age when they started helping out [there]. Throughout their Junior H.S. and H.S. years, they would, along with my [d]ad, get in our brown Chevrolet van and go to the Hunts Point Market at the break of dawn to purchase the produce for the family business. *I don't believe they had a free Saturday to*

JEFFREY LICHTMAN

Hon. Hon. Joanna Seybert
United States District Judge
October 23, 2020
Page 6

> *themselves until college.* And even then, they would help out when they would visit from school.
>
> Due to the large age gap between myself and my brothers and their hard work, the store was doing well enough that by the time I was Junior H.S. age, I did not have to work at the store and had the luxury of having free weekends to not only play but also study. In part, due to my parent's limited English, Jason took on the role of a surrogate parent for me. Much of my educational pedigree, I credit to him. Without his encouragement, I would not even have applied to Stuyvesant H.S., from which I graduated in 1989. He was a tremendous support to me when I ended up at the University of Chicago, graduating with honors in 1993. He also encouraged me to go to graduate school and I graduated from Tufts University School of Dental Medicine with honors in 2000.

Ltr. of Christopher Choe, Ex. D (emphasis supplied); see also July 12, 2020 Letter of Sangsul Choe, attached as Exhibit J ("As the eldest, Jason was in charge of me and my other siblings. I remember that he took care of me and kept me safe in our new country. He was thirteen years old at the time which was a young age to have so much responsibility").

### A Dedicated Family Man

Given the above praise concerning the defendant's dedication to his family at such a young age, it should come as no surprise to learn that the letters appended to this submission document that Mr. Choe's efforts have continued to this day, whether by taking the lead on the care of elderly relatives, or acting as a surrogate parent for his nieces and nephews when in need. See Ltr. of Ellen Choe, Ex. C ("it fell to my father to handle our education, the household finances, our doctors' appointments, and everything in between .... my father has always been a hands-on parent"); see also July 12, 2020 Letter of Billy Yun, attached as Exhibit K ("I saw what an excellent husband and father he is to his family").

To begin, Mr. Choe's niece, Joanne Yun, describes the important role that her uncle has held in her life:

> Jason was always the calm, kind uncle who was always gentle and patient. For most of my childhood years, Jason and my aunt included me and my brother on their family vacations when our own parents couldn't take us. Every winter, Ellen, Daniel, my brother and I took ski lessons, and despite needing a beginner's

Jeffrey Lichtman

Hon. Hon. Joanna Seybert
United States District Judge
October 23, 2020
Page 7

> lesson every winter, Jason never hesitated to get them for me. My cousins and brother were much stronger skiers and would zip through blue and black diamonds while I trailed behind, too scared to make it through. Always standing behind me patiently, waiting for me to get back up was Jason, never making me feel bad that I was slowing him down, treating me like I was his own daughter. *I grew up knowing that I could always count on Jason to help and guide me through any troubles.*
>
> After my mother had to get unexpected surgery for a brain tumor, it was tough for me to finish school and I couldn't graduate from college. I felt like such a huge disappointment to my parents, who were already going through a hard time as it was. I was too nervous to tell my parents, so I called Jason. Jason was the first family member I felt comfortable telling. In one of the most vulnerable times of my life, I knew that Jason would be supportive without judging me. I'll never forget when Jason took me out for lunch to talk about it – he was concerned first and foremost about how I was doing emotionally and not focused on my failure. He reassured me that while this was a mistake, I was going to learn and grow from it, and that everything was going to be okay. And everything turned out more than okay. I ended up finishing my degree at Harvard Extension School on the dean's list. *I could not have achieved what I did without Jason's constant support and encouragement throughout my life.*

Letter of Joanne Yun, attached as Exhibit L (emphasis supplied). Joanne Yun's mother, Gye Yeong Yun, echoes this take, writing that she is "grateful that [her] children have Jason as an uncle because he has been like a second father to them [and] ... has provided them with an endless amount of support." Ltr. of Gye Yeong Yun, Ex. B ("From vacations to educational outings, Jason and his wife always made sure to bring my children along"); see also Ltr. of Sangsul Choe, Ex. J ("he gave me excellent advice when my children applied to college").

Joanne Yun's brother, David, was similarly close with his uncle and also received educational and other assistance from him:

> During my childhood summers, my uncle Jason would take care of me and my sister as both of my parents held down jobs to support our family. The summer I spent at my uncle's home studying for the SATs stands out as one of many examples of his upstanding

Jeffrey Lichtman

Hon. Hon. Joanna Seybert
United States District Judge
October 23, 2020
Page 8

> character. Every weekend for about two months, my uncle Jason would drive me, my sister, and his two children to the local library and help us prepare for our SATs. He would sit with us for hours making sure we had the right books, enough snacks, and completed our practice tests in time. After the long hours of studying, my uncle Jason would reward us with frozen custards and trips to the golfing range.
>
> My uncle Jason's dedication to my academic success meant a lot to me at the time. Despite the many times I had taken the SATs, the scores had always been pretty poor. Consequently, my relationship with my parents took a strain and I considered giving up on college all together. At the time, my uncle was the only person to guide me towards my goal without shaming me for my failures. After each practice test, he would sit with me and go through each section of the test. He would point to each incorrect answer and ask me to talk him through my thought process. *My uncle's willingness to parse through each of my missteps taught me how to empathize with others in need.*

July 11, 2020 Letter of David Yun, attached as Exhibit M (emphasis supplied).

Joanne's and David's father, Inkuk Yun, writes of his experience when his wife was suddenly diagnosed with a brain tumor and Jason Choe was there to help:

> One special thing I will never forget is when my wife had to get surgery for a brain tumor that was suddenly discovered. The operation was dangerous and urgent. At that time, I was in a difficult state, unable to process much from the shock of sadness. In that situation, my wife's surgery would not have gone smoothly without Jason's help. He mobilized on our behalf like it was his job, helping not only by translating doctors' consultations, but also by helping us figure out all the forms we had to fill out. I cannot forget the warmth from Jason, who strove to comfort my heavy heart during that time. In a stressful time, he made sure that the only thing I needed to think about was my wife. He took care of driving me to the hospital and making sure the rest of the family knew what was happening and let me focus on my wife becoming healthy again. Jason did all of this with no hesitation and without

JEFFREY LICHTMAN

Hon. Hon. Joanna Seybert
United States District Judge
October 23, 2020
Page 9

> anyone asking him to. Honorable Judge, that is Jason's real character.

July 4, 2020 Letter of Inkuk Yun, attached as Exhibit N.

Similarly, Sangsul Choe, another of the defendant's brothers, recalls in his letter a difficult time when Mr. Choe aided him immensely:

> Twenty years ago, I had an accident and was hospitalized for several weeks at New York Cornell Presbyterian Hospital and Mount Sinai Hospital. Almost every day, Jason drove in from Long Island to visit me. Many days, he drove first to Staten Island to pick up our parents, then drove to Manhattan to see me at the hospital. He spent many hours in the car every day to make these visits happen. Also, Jason took care of my small business while I was incapacitated. Then, when I was released, I was not allowed drive for 5-6 months. It was my brother, Jason, who made sure that I got everywhere I needed to go. *Your Honor, my brother goes above and beyond the usual duties to take care of his family members.*

Ltr. of Sangsul Choe, Ex. J (emphasis supplied); see also July 16, 2020 Letter of Pastor Samuel Kim, attached as Exhibit O ("I have witnessed his devotion to his family many times before").

Mr. Choe's brother-in-law, Pastor Inho Yun, similarly provides an account of the aid that he has received from the defendant throughout his life in his letter to the Court:

> Jason has ... supported me in my personal life, both financially and emotionally. In 2012, when my car was being repossessed, he helped me get back my only mode of transportation by paying off the balance. I am still driving that car today, thanks to him. Last year, I was diagnosed with prostate cancer and Jason is a big reason why I was able to get treatment. *He has helped me pay for the cancer treatments and encouraged me to stay strong.* He calls me often to check on me since I am the only member of my family living outside of New York. Whenever I visit New York, I always stay at his home rather than my blood-related brothers' homes because I feel more comfortable and closer with Jason.

JEFFREY LICHTMAN

Hon. Hon. Joanna Seybert
United States District Judge
October 23, 2020
Page 10

July 6, 2020 Letter of Pastor Inho Yun, attached as Exhibit P (emphasis supplied).

The letters attached to this submission also praise Mr. Choe's dedication to caring for his parents as they aged and became infirm. First, when his mother battled complications from kidney disease, which ultimately took her life, and then in aiding his father who suffers from Parkinson's disease. The defendant's father, Bong Jin Choe, explains:

> We lost Jason's mother to kidney complications last year. She was battling kidney disease and diabetes for more than 20 years and Jason was always there to take care of her. Because of my Parkinson's [d]isease and my wife's illnesses, we could not drive ourselves anywhere. *He took his mother to every dialysis appointment and every surgery.* He was also taking care of me, bringing me to my appointments, picking up things we needed, and driving us when we needed to go somewhere. He did all of this for us while also taking care of his own family and raising two children. Although I have three other children, Jason is the one who I call when I need help. *I depend on him and he is always there for me.*

Ltr. of Bong Jin Choe, Ex. A (emphasis supplied); see also Ltr. of Christopher Choe, Ex. D ("Even now, with all that is going on with his criminal case, he still makes time to take care of our father, taking him to his doctor's appointments and ensuring all his needs are taken care of").

The defendant's daughter, Ellen, similarly witnessed her father's commitment to his parents as they battled multiple ailments:

> I have watched my father care tirelessly for his parents. His mother, who passed away last year, lived with serious diabetes for much of her life, leading to other health complications. My father was a devoted son, driving her to every doctor's appointment, handling the insurance, and picking up her medication. He still visits my grandfather multiple times a week to deliver meals and keep him company in his old age. Because my grandfather has Parkinson's [d]isease, he also relies on my father to get to church and medical appointments.

Ltr of Ellen Choe, Ex. C; see also Ltr. of Daniel Choe, Ex. I ("Until last year, when my grandmother passed away, much of his time was dedicated to taking care of her and her various

JEFFREY LICHTMAN

Hon. Hon. Joanna Seybert
United States District Judge
October 23, 2020
Page 11

health issues.  Now, it is spent looking after my grandfather, who remains largely immobile due to Parkinson's [d]isease").

As Ellen Choe further recognizes in her letter to the Court, her father also "supports [her] mother's side of the family." Ltr. of Ellen Choe, attached as Exhibit C ("His love and desire to care for his in-laws, even though they are not blood-related, is just another example of his compassion and capacity to care for others"). The defendant's mother-in-law, Young Ae Chun, explains:

> Since Jason married my daughter, he has cared for me like a real son.  When I immigrated to America, I was divorced and had nothing.  After 6 years of working hard at a nail salon, I had just enough to bring my children here.  I would have continued to live a difficult life but Jason cared for me once he married my daughter.  He went grocery shopping for me every weekend and helped me get anything I needed.  When I was sick, Jason is the one who would take me to the doctor and buy me medicine.  He drove me to my church every Sunday and brought me home.  When I was in the process of becoming an American citizen, Jason is the one who helped me study to pass the test.

Ltr. of Young Ae Chun, Ex. E.

A Dedicated Community Member and Volunteer

In addition to being a caring and devoted family member, the letters also document Mr. Choe's sincere dedication to charity and his community.  As recounted in the PSR and observed in several of the submitted letters, Mr. Choe volunteers with Island Harvest in Long Island, aiding in the distribution of food to low income families and senior citizens.  PSR at ¶ 47; Ltr. of Daniel Choe, Ex. I ("volunteering in his broader community, serving food-insecure residents of Long Island with Island Harvest ... in these uncertain times").  Indeed, since November 2019, the defendant has volunteered for 48 days distributing meals for the Brentwood School District, 47 days for the Senior Mobile Pantry in Central Islip and Brentwood, and 16 days for food distribution services sponsored by New York State in Bay Shore, Massapequa and Hicksville.  See Collected Emails from Island Harvest, attached as Exhibit Q; Ltr. of Ellen Choe, Ex. C ("active volunteer with Island Harvest, handing out food to needy Long Islanders").  As Ellen Choe recognizes in her letter: "While many people would understandably have stopped volunteering in the time of Covid-19, my father has ramped up his efforts, going three times per week." Id.

JEFFREY LICHTMAN

Hon. Hon. Joanna Seybert
United States District Judge
October 23, 2020
Page 12

      Mr. Choe's volunteer efforts and dedication to his community, however, are neither an anomaly or a post-arrest development. Ltr. of Sangsul Choe, Ex. J ("a quiet, steady example of hard work and community service"). Multiple individuals observed in their letters that the defendant gave freely of his time for years in aiding others at the Roslyn Methodist Church. See, e.g., Ltr. of Bong Jin Choe, Ex. A ("I have watched him gain respect for his quickness to volunteer. He always drives other elder members to and from service, helps clean up and takes care of much of our clerical work"). For example, Ellen Choe provides her observations of her father's volunteer efforts with the church from when she was a child:

> Growing up, we spent much of every Sunday at our church. After the service, my father stayed to clean up and provide transportation to elder members of the church who could not drive themselves. Every Christmas, he opened up our home to church members who did not want to spend the holiday alone, providing warm meals and joyful company. As our house has become too far for many church members, my father now helps coordinate a similar gathering at the church, catering in food for everyone. Because of my father's generosity, I cannot recall a Christmas ever spent with just our family.

Ltr. of Ellen Choe, Ex. C; see also Ltr. of Daniel Choe, Ex. I ("He is an active member and volunteer with our church, always doing what he can to help, whether that be staying late or shuttling people back and forth").

      The pastor of Mr. Choe's church echoes this sentiment, praising:

> Every Sunday, Jason would come early or stay late to set up and clean the chairs and tables for our fellowship time. He did not hesitate to work hard and break a sweat if necessary. I cannot count the number of times Jason has asked me how he can be of assistance. Jason Choe is a devoted servant of our church.
>
> Every Christmas, Jason invited the entire congregation to his home for a celebration so that everyone could be together. He prepared food and gifts for approximately 150 people. There are very few people that I've met who would open their homes with such a generosity. I also know he has offered financial help to his fellow parishioners in times of need.

JEFFREY LICHTMAN

Hon. Hon. Joanna Seybert
United States District Judge
October 23, 2020
Page 13

Ltr of Pastor Samuel Kim, Ex. O; see also Ltr. of Ryan C. Pak, Ex. H. And Mr. Choe's brother-in-law, Pastor Inho Yun, notes that the defendant also has donated to his "mission trips to Asia and Africa," writing: "He goes out of his way to donate resources and items that we can bring to help the people we are visiting." Ltr. of Senior Pastor Inho Yun, Ex. P. Pastor Yun further recalls that in 2010, he stopped in "New York before leaving for [a] mission trip to Vietnam[,] but [a]fter hearing about the conditions of [his] church's upcoming mission trip, [Mr. Choe] was concerned about [their] safety and went out of his way to purchase helpful medicines and bug sprays to keep [them] safe." Id.

The defendant has also paid out of pocket to have extra food items from his 7-Eleven delivered to local churches and soup kitchens instead of throwing them away. As 7-Eleven employee Syed Taqui recounts in his letter to the Court:

> I worked the overnight shift many times. Some stores throw the extra food into the garbage at the end of the day. Jason did not do this. Jason liked to donate the food to churches and charities for needy people. *For four years, Jason told me to pay for drivers to deliver the food to good organizations.* I was impressed by him and will never forget how he wanted to do the right thing for people who needed food. I have not heard of someone paying for drivers to deliver extra food this way. Jason does whatever he can to be a giving neighbor and community leader.

July 11, 202 Letter of Syed Taqui, attached as Exhibit R (emphasis supplied); see also August 1, 2020 Letter of Kwang Ho Lee, attached as Exhibit S ("Jason serves in soup kitchens [and] sends materials to needed places ....").

Letters from Mr. Choe's Employees

While this case involves the underpayment of at least six employees at Mr. Choe's 7-Eleven franchise, the letters appended to this submission make clear that not all of those who worked for him felt similarly aggrieved. Instead, the letters from Mr. Choe's present and former employees that we received revere his fairness, work ethic and "patien[ce]." See, e.g., July 15, 2020 Letter of Naheen Khan, attached as Exhibit T ("never an arrogant boss, I have rather known him as a compassionate, reliable and hardworking person"). For example, employee Sikandar Khan recalls in his letter to the Court that "every time [he] needed [Mr. Choe], he was available to listen to his employees whether to solve work ... or personal issues." July 15, 2020 Letter of Sikandar Khan, attached as Exhibit U. Further, Mr. Khan notes that he will "never forget how [Mr. Choe] loaned [him] money without interest ... to pay back a debt," even though Mr. Choe "barely knew" him at the time. Id.

  Muhammad Anwar, who has been working at "various 7-Eleven stores for over twenty years" praises that despite working for several different franchise owners, "Jason is by far the best boss [he] ever had," adding: "He is kind and humble. He treats customers, workers, and neighbors with respect. If a worker makes a mistake, Jason is quick to forgive them. Not every boss is like that." July 10, 2020 Letter of Muhammad Anwar, attached as Exhibit V. Roberto Rubio concurs that Mr. Choe was "always an excellent boss, not arrogant or inaccessible, but someone whom you could successfully talk to solve issues whether personal or related to the job." July 8, 2020 Letter of Roberto Rubio, attached as Exhibit W; see also Ltr. of Syed Taqui, Ex. R ("Someday, I would like to be a boss like Jason. He is a good role model and I will always remember the good lessons that I learned from him").

  Employees from Mr. Choe's other business, No. 1 Laundromat in the Bronx, also submitted letters to the Court praising their experiences with the defendant. For example, Emilia Gonzalez writes:

> Jason treats every single worker and customer with respect. The laundromat is a good place to work because of Jason's kind heart. He pays us well, speaks to us in a friendly way, and cares about us as individuals. ...
>
> *After my mother died, Jason gave generously to me so I could send money home to pay for the funeral.* It was an incredible gift during a sad time for my family. If I have a money problem, I know that I can talk to Jason and that he will help me. He is a good listener who I can talk to even when I have a difficult situation. It is not this way with every boss. Jason is a very special person and everyone knows it.

Ltr. of Emilia Gonzales, Ex. F (emphasis supplied). Ms. Gonzales' co-worker at No. 1 Laundromat, Marie Louise Evelyne Sawadogo, likewise applauds Mr. Choe's efforts as her employer:

> Jason is the best boss I ever worked for. He is very understanding and never raises his voice. If he comes in and sees an untidy floor, he will pick up a broom and sweep it up himself. He does not complain. He goes to work like he is a part of the team and family. Since Jason shows respect, everyone respects him and does their job well. When he speaks to anyone, he always says "please." The workers want to do their jobs the right way because he is such a good person.

> ... This year, my father died in Burkina Faso in Africa. Jason paid for my airline ticket so I could be with family to mourn. This is just the type of person he is. *If there is a way to help, Jason will do it.* If he finds out there is problem, he will solve it in the most generous, loving way.

Ltr. of Marie Louise Evelyne Sawadogo, Ex. G (emphasis supplied).

<u>Remorse</u>

Finally, nearly every letter submitted on behalf of Mr. Choe details the since regret and remorse that he has expressed for his criminal conduct. <u>See</u>, <u>e.g.</u>, Ltr of Bong Jin Choe, Ex. A ("I have spoken to my son about his wrongful acts ... and he is very sorry for the hurt he caused to his employees"); Ltr. of Joanne Yun, Ex. L ("He has been openly remorseful for his actions and I know that he can and will do better").

The defendant's daughter, Ellen, recalls her father's open and honest remorse for his conduct in her letter to the Court:

> I have only seen my father cry twice in my lifetime – once when my grandmother passed away and the other, after his arrest. He feels immense guilt over his actions and cannot stop expressing remorse for the pain he has caused others. My father has opened up to us in a way that he has never done before, speaking up when he needs help. Rather than wallowing in self-pity, he has used this as an opportunity to accept responsibility and learn from his mistakes. This is not unlike his method of parenting when my brother and I would get into trouble as children. While my mother preferred to ground us, my father would make us reflect and discuss why our actions were wrong and present a plan for how we would be better.

Ltr. of Ellen Choe, Ex. C; <u>see also</u> Ltr. Young Ae Chun, Ex. E ("He knows he made a mistake and cannot stop feeling sorry over it"). The defendant's brother, Christopher, concurs with Ellen's assessment, recalling that "Jason has expressed nothing but contrition to me and an inordinate amount of shame." Ltr. of Christopher Choe, Ex. D; <u>see also</u> Letter of Jane Choe, attached as Exhibit X ("an example of how to accept consequences with humility").

Mr. Choe's pastor, Samuel Kim, echoes that "Jason described his illegal acts to [him] in a forthright manner. He accepted responsibility and did not hide the truth." Ltr. of Pastor Samuel

JEFFREY LICHTMAN

Hon. Hon. Joanna Seybert
United States District Judge
October 23, 2020
Page 16

Kim, Ex. O; see also Ltr. of Muhammad Anwar, Ex. V ("Jason explained that he made a mistake and understood that he broke the law").  Sangsul Choe writes that he "know[s] that [his brother] wishes he could go back and make a different decision. ... [He] knows that what he did was wrong," (Ltr. of Sangsul Choe, attached as Exhibit J) and following his conversations with his father, Daniel Choe concludes that "he is heartbroken over his actions and will regret hurting his employees and his family for the rest of his life."  Ltr. of Daniel Choe, attached as Exhibit I; see also Ltr. of Ryan Pak, attached as Exhibit H ("I am confident that he truly feels sorry for his offense").

        **D.**      **CONCLUSION**

Defendant Jason Choe comes before this Court asking for mercy.  A life filled with good deeds, sacrifice, and hard work has been marred by his criminal actions.  Nevertheless, as the powerful enclosed letters reveal, Mr. Choe is an uncommonly decent and giving man who unlike many defendants has made extraordinary efforts to help friends, family, and even strangers throughout his life, when no one was watching, when he had no need to impress a judge deciding his fate.  For these reasons and the others stated herein, a probationary sentence is respectfully requested.

Respectfully submitted,

Jeffrey Lichtman
Jeffrey Einhorn

Encs.

cc:    Virginia Nguyen, Esq.
        Assistant United States Attorney